## Case No. 8,395.

### LITTLE et al. v. GOULD et al.

[2 Blatchf. 362.] [1]

Circuit Court, N. D. New York. April 2, 1852.

COPYRIGHT—COURT DECISIONS — STATE REPORTER —NOTES AND REFERENCES—ASSIGNMENT OF COPYRIGHT.

1. The state reporter, Mr. Comstock, by whom the third volume of Comstock's Reports of Cases Argued and Determined in the Court of Appeals of the State of New-York was prepared, was the author of that volume, within the copyright act of February 3, 1831 (4 Stat. 436).

2. Under the acts of the legislature of New-York of April 11, 1848, and April 9, 1850, in relation to the reports of the decisions of the court of appeals, the interest of the reporter in said third volume, as an author, passed to the secretary of state, in trust for the benefit of the state, and it was competent for that officer to take out a copyright for the volume under said act of February 3, 1831.

[Cited in Lawrence v. Dana, Case No. 8,136; Hanson v. Jaccard Jewelry Co., 32 Fed. 203.]

3. The words, "any notes or references," in the act of April 9, 1850, embrace the head-notes and marginal-notes of the reporter, together with the arguments of counsel and the cases cited therein.

[Cited in Banks v. Manchester, 23 Fed. 145.]

4. Where, under said acts of the legislature of New-York, a contract was entered into by the state officers with A., to publish the volumes which should be prepared by the reporter, and the contract declared that it was intended to operate as an assignment of the copyright: Held, that A. was, as assignee of the copyright, entitled to a remedy by injunction for its infringement.

[Cited in Yuengling v. Schile, 12 Fed. 106.]

5. A.'s right was not affected by the provision in the 22d section of the 6th article of the constitution of New York, that all "judicial decisions shall be free for publication by any person."

[Bill in equity by Edwin C. Little and Oliver Scovill against Anthony Gould and others.] This was a motion, after answer, to dissolve the provisional injunction granted in this case [Case No. 8,394].

NELSON, Circuit Justice. This is a motion to dissolve an injunction heretofore issued against the defendants, restraining them from publishing or selling the third volume of Comstock's Reports of Cases Argued and Determined in the Court of Appeals of the State of New York. The plaintiffs claim to be the proprietors of the copyright of this work, as

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

assignees of the state, and, as such, to be entitled to the exclusive privilege of printing, publishing and vending the same. The injunction was originally granted on this ground, and the same is now urged against the motion to dissolve it, which is made after the coming in of the answer.

The act of congress passed February 3, 1831 (4 Stat. 436), confers the proprietorship of a book upon any citizen of the United States, or resident therein, who shall be its author, and who shall have complied with the requisites of the act, and upon the executors, administrators or legal assigns of such person. This act was passed in pursuance of the eighth clause of the eighth section of the first article of the constitution of the United States, which declares that congress shall have power "to promote the progress of science and useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries." The simple question, therefore, upon this motion is, whether or not the plaintiffs have made out a title to the copyright of the volume in question, as assignees of the same. If they have, the injunction should be retained; otherwise, not.

That Mr. Comstock, the reporter, is the author of the book, within the meaning of the act of congress, is a matter not to be controverted. It was conceded throughout the case of Wheaton v. Peters, 8 Pet. [33 U. S.] 591, that Mr. Wheaton was entitled to the copyright of his Reports, as author; and the only question was, whether he had secured the right by a compliance with the requisites of the statute. A majority of the court, entertaining doubts upon this question, as the facts appeared before them in the record, remanded the cause, with directions to the court below to inquire whether or not these pre-requisites, as determined in that case, had been complied with. The only exception to this view was in respect to that part of the work which embraced the written opinions of the judges. They were regarded as having become the property of the public, and, therefore, as not the subject of a copyright.

The copyright of the work in question was taken out not by Mr. Comstock, the author, but by Christopher Morgan, secretary of the state, claiming to have become the assignee of the author, in trust for the state. A printed copy of the title was deposited in the office of the clerk of the district court, on the 20th of November, 1850, in pursuance of the act of congress; and, within three months after the publication of the book, copies were deposited with the clerk, with the librarian of the Smithsonian Institute, and with the librarian of the congress library.

By an act of the legislature of the state of New-York, passed April 11, 1848 (Laws 1848, c. 224, p. 335), amending a previous act on the subject, it was provided, among other things, that the reporter of the decisions of the court of appeals should have no pecuniary

interest in the reports, and that the same should be published under his supervision, by contract to be entered into by the reporter, the secretary of state and the comptroller, with the person or persons who, in addition to furnishing the secretary of state with sixty-four copies of each volume, should agree to publish and sell the same to the public at a price not exceeding three dollars per volume. This act also provided (section 3) that it should not be lawful for the reporter or any other person within the state to obtain a copyright for the said reports, notes or references, but that the same might be published by any persons. By an act passed April 9, 1850 (Laws 1850, c. 245, p. 479), this section was amended so as to read as follows: "It shall not be lawful for the reporter, or any other person within this state, to secure or obtain any copyright for said reports of the judicial decisions of the court of appeals, but the same may be published by any person;" and the following section was added: "The copyright of any notes or references made by the state reporter to any of said reports shall be vested in the secretary of state, for the benefit of the people of this state." The reporter was made a state-officer, with an annual salary as a compensation for his services.

On the 20th of April, 1850, the reporter, the secretary of state and the comptroller, in pursuance of the act of the legislature, already referred to, entered into a contract with the plaintiffs for the publication of the reports for the term of five years, and also for the exclusive benefit to them of the copyright of the same to be taken out on behalf of the state, and the said contract was declared to be intended to operate as an assignment and transfer of the copyright. In pursuance of this agreement, and since the taking out of the copyright of the work by the secretary of state, the plaintiffs have entered upon the printing and publication of the volume of reports in question, have published the same, and have put copies of it on sale at a price not exceeding two dollars and fifty cents each.

Upon this state of the case, I am of opinion that the interest of the reporter in this third volume of his reports, as an author, passed to the secretary of state, in trust for the benefit of the state, and that it was competent for that officer to take out the copyright in pursuance of the provisions of the act of congress of 1831, securing to the state the exclusive right of proprietorship in the work. The reporter must be deemed to have accepted the terms and conditions of the acts of the legislature of April 11, 1848, and April 9, 1850, the effect of which was to vest the interest in the state, he receiving a compensation for his labors by way of annual salary.

It has been argued, by the counsel for the defendants, that the copyright in this case is void, on the ground that no authority is given by the act of congress of 1831 for taking out the copyright in the name of a trustee, for the benefit of another. But, it may be an-swered, that there is nothing in the act forbidding it. The party to whom the assignment is made, whether for the benefit of another or not, holds the legal interest in the work, as assignee of the author, and comes, therefore, within the very words of the law entitling him to the copyright. Whether a third person has an equitable interest in the work, derived from the author or from the legal assignment, is a question between those parties, in respect to which I do not see that the public interest or policy is at all concerned. The courts will take care of those equitable interests. The legal assignee of the author is competent to take out the copyright, and the secretary of state must be regarded as standing in this position, under the act of the legislature of April 9, 1850.

It has also been argued, that the act of 1850 did not vest in the secretary of state the right of the author of the Reports to its fullest extent, but only his interest in any notes and references made by him to the reports, thereby excluding the reports themselves, as understood in the ordinary acceptation of that term, with head-notes and arguments of counsel. There is certainly much force in this argument, and, in my judgment, it presents the only real difficulty in the case. But, on looking at the course of the legislation of the state on this subject, (there have been three acts passed in relation to it,) I have come to the conclusion that the phrase "any notes or references," in the connection in which it is found, may be fairly construed as embracing the head-notes and marginal notes of the reporter, together with the arguments of counsel and the cases cited therein.

The third section of the act of April 11, 1848, prohibited the reporter, or any other person within the state, from obtaining a copyright of the reports, notes or references, and declared that the same might be published by any person. This provision was absurd enough in connection with the system prescribed in the same act for the publication of the reports, which made it the duty of certain public officers to contract for the printing and publishing with the person who, in addition to furnishing the state with sixty-four copies of each volume, would agree to sell the volumes most advantageously to the public, and at a rate not exceeding the price of three dollars per volume. The idea of obtaining such a contract from a person to whom the benefit of a copyright was denied, is at least remarkable, for the third section covered the whole ground. Any person could republish the volume, with all the notes and references, as soon as it came from the hands of the reporter.

The act of April 9, 1850, was designed to correct this oversight. That prohibits a copyright for the reports of the judicial decisions of the courts of appeal, and allows the same to be published by any person. But it vests the copyright of any notes or references made by the reporter to said reports, in the secre-

tary of state, for the benefit of the people of the state, thus securing to the state the labors of the reporter, which he might otherwise have secured to himself under the copyright act, as the author.

To construe the amendment made by the act of 1850 as simply securing a copyright for any annotations or foot-notes the reporter might choose to make, in the course of reporting the decisions, such as are common in the nine volumes of the reports of the supreme court of this state by the late learned and laborious Judge Cowen, and nothing more, would leave the act of 1850, in respect to the system of reporting, with very little if any advantage over that of 1848. For, whether there would be annotations or foot-notes by the reporter, accompanying the volumes, or not, would depend not upon any obligation or duty on his part, but upon his mere discretion or convenience. Besides, these notes are incidental matters, and, although frequently valuable, constitute no part of the reports of the decisions of the courts. Hence, securing the copyright of them to the state would have been of trifling importance, by way of enabling the public officers to contract for the printing and publication of the volumes of reports agreeably to the terms and requirements of the statute.

The legislature of 1850 saw the error into which that of 1848 fell in attempting to provide for a cheap publication of the reports, and designed to correct it, and have accomplished their purpose, if the view I have taken of the act of 1850 is well-founded. But, if the counsel for the defendants is right in his construction, they have utterly failed to accomplish it, and have left the system of reporting as impracticable and absurd as they found it. For, according to that construction, the whole amount of the amendment or alteration is to enable the public officers to secure to the publishers the exclusive right to the annotations or foot-notes, if any, made by the reporter, leaving the volumes of reports, with the head-notes, arguments of counsel, &c., free to a re-publication by any person. I do not think that the language used in the act, although it is obscure and not well chosen to express the intent of the legislature, necessarily leads to such a construction. If not, such a construction should certainly not be admitted.

I have not deemed it necessary to look particularly into the true construction of the provision of the constitution of this state to which reference has been made. Article 6, § 22. The right of the plaintiffs rests exclusively upon the act of congress, which confers a copyright upon authors, and also upon their assignees, who have complied with its provisions. The right is derived under this act, and is not at all dependent upon or affected by the provision of the state constitution. If the plaintiffs are the assignees of the volume in question, by title derived from the author, they have a right to the protection of this court, and no provision of the state constitution can deprive them of it. If they are not such assignees, then the act of congress has no application to this case, and, consequently, this court has no jurisdiction of this case. For, whatever may be the right of the respective parties under the constitution and laws of the state, this court has nothing to do with them. The questions on which such rights depend belong to the state tribunal and depend upon state laws. This court does not interfere with them, unless in cases of jurisdiction on account of the citizenship of the parties; and then it administers the laws of the state. I am free to say, however, that, in my judgment, the provision of the state constitution was not designed to confer upon any person the right to republish the reports of judicial decisions, whether published under the authority of the state or by individuals, but was designed to secure the right to report and publish the decisions of the courts, to all persons who might choose to undertake the business, unembarrassed by any exclusive monopoly in consequence of state legislation.

The interest of the plaintiffs in the copyright, as derived under the contract with the state officers, whether regarded as a legal or as an equitable interest in the same, is sufficient to entitle them to the remedy claimed.

There are some other questions raised in the case which would deserve a consideration, if this were an original application for an injunction. As the injunction has already been granted, and this motion is to dissolve it, I have deemed it best to confine my opinion to the legal rights involved in the case. The motion to dissolve the injunction must, therefore, be denied.

---

LITTLE (HALL v.). See Case No. 5,939.

LITTLE (McDONALD v.). See Case No. 8,-760.

LITTLE (PARK v.). See Case No. 10,715.

LITTLE (PATRIOTIC BANK v.). See Case No. 10,809.